ROYAL CROWN BOTTLING CO. OF KNOXVILLE *v.* STOKES, COM'R OF FINANCE AND TAXATION.

(*Nashville,* December Term, 1940.)

Opinion filed January 11, 1941.

FOWLER & FOWLER, of Knoxville, and NORVELL & MINICK, of Nashville, for appellant.

ROY H. BEELER, Attorney-General, and W. F. BARRY and HARRY PHILLIPS, Assistant Attorneys-General, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This case presents a controversy between the Commissioner of Finance and Taxation and the complainant as to the amount due from the complainant, Royal Crown Bottling Company, on account of the Carbonic Acid Gas Tax. The chancellor sustained the contention of the Commissioner and the complainant has appealed.

Sections 1167 et seq. of the Code levies a privilege tax upon distributors of liquid carbonic acid gas and dealers in liquid carbonic acid gas. The tax is fixed at five cents per pound for each pound of substance used.

"Dealer" is defined by the Code as a person who, "in the course or conduct of, or as an incident to, his business in this state, uses liquid carbonic acid gas in the preparation and/or mixing and/or sale of soft drinks or other beverages or for any other purpose." The complainant uses carbonic acid gas in the manner above set out, but not in its liquid form.

The Code sections cited were amended by chapter 80 of the Public Acts of 1933 "by adding the words 'or substitutes therefor' after the words 'liquid carbonic acid gas.' "

By chapter 47 of the Public Acts of the First Extra Session of 1935, the Code sections cited were amended by adding at the end of such sections the following proviso:

"Provided, that solid carbonic acid gas is hereby defined as a substitute for liquid carbonic acid gas and for convenience of Department of Finance and Taxation, the tax, when measured by such gas in its solid state, shall be computed at the rate of two cents for each sixteen ounces."

The complainant is a "dealer" as that term is defined by the Code and the amendatory acts and uses carbonic acid gas, but uses it in solid form and not in liquid form.

The complainant, insisting that it was only liable for the tax calculated on the basis of two cents a pound, nevertheless paid the tax at the rate of five cents a pound, paying under protest so much of the tax as represented the additional three cents a pound. This suit was brought to recover the amount in dispute.

The chancellor was of opinion that chapter 47 of the Public Acts of 1935, 1st Ex. Sess., was unconstitutional under Section 8 of Article 1 and Section 8 of Article 11 of the Constitution. That it resulted in arbitrary discrimination between dealers using carbonic acid gas in its liquid form and those using the same in its solid form. He therefore held complainant liable for the tax measured at the five cents rate.

We think the chancellor was right. This substance, chemically known as $CO_2$, is only used in its gaseous form in the manufacture and preparation of soft drinks. It is the use of the gas by dealers which is desig-

nated a privilege. It is a chemical truth that a given weight of liquid $CO_2$ and the same weight of solid $CO_2$ will produce the same amount of gas. As a liquid the gas would cost the complainant seven cents a pound. As a solid it costs complainant three cents a pound. We see no reason why a distinction should be made in favor of those using $CO_2$ in solid form.

By way of sustaining the discrimination it is said for the complainant that its tax is calculated by the weights shown on the invoices it receives from the manufacturer. That there is a distinct loss by evaporation during the shipment of solid $CO_2$, and that there is a loss in breaking up the substance and placing it in the converters where it becomes gas. It is said that no such loss occurs in the shipment of liquid $CO_2$ and in its conversion into the gas. That this is a sound basis for classification. However, according to complainant's proof the loss by shipment and conversion amounts to about 15% only. On the other hand, the tax is reduced in favor of the user of solid $CO_2$ by 250%. Obviously, therefore, the loss in weight so complained of furnished no excuse for such a disproportionate discrimination.

It is again said for complainant that the use of solid $CO_2$ in a business like the complainant's involves the expense of some additional equipment. That a converter has to be used, which is not necessary when $CO_2$ is employed in its liquid form. Nothing appears to indicate the cost of this additional equipment and the conclusion is safe that complainant would not have changed from its use of liquid $CO_2$ to the use of solid $CO_2$, and would not have purchased the extra equipment, unless complainant's management had been satisfied that the change would effect economy or efficiency in the long run.

The reason assigned by the Legislature to support

the classification attempted by chapter 47 of the Public Acts of 1935, 1st Ex. Sess., as heretofore seen, is the "convenience of Department of Finance and Taxation." This appears to be no reason at all. The weight being ascertained, it is just as easy to multiply that sum by five as it is to multiply it by two.

As pointed out by the chancellor, the case of *Seymour* v. *Fort, Commissioner,* July, 1936[1], did not involve the question here considered. Furthermore, that case was before the court on demurrer and the court was unable to consider any facts other than those stated in the bill.

We find none of the authorities relied on by complainant to be controlling here. Certainly the Legislature has a wide discretion in the matter of classification in legislation of the character under consideration. Nevertheless classification cannot be palpably arbitrary and without any reasonable support.

We think that chapter 47 of the Public Acts of 1935, 1st Ex. Sess., is clearly invalid for the reasons stated and that the previous statutes levying the five cents tax on the use of liquid carbonic acid gas and its substitutes is applicable to the complainant's business. Without doubt, complainant is using solid carbonic acid gas as a substitute for liquid carbonic acid gas.

Affirmed.

---

[1]Not designated for publication.